## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

GARY WAYNE SMITH,                          Case No. 1:11-cv-203
      Plaintiff                             Spiegel, J.
                                   Litkovitz, M.J.
     vs

COMMISSIONER OF                            **REPORT AND**
SOCIAL SECURITY,                           **RECOMMENDATION**
      Defendant

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 10), the Commissioner's response in

opposition (Doc. 13), and plaintiff's reply memorandum. (Doc. 14).

### I. Procedural Background

Plaintiff filed applications for DIB and SSI in December 2007, alleging disability since

December 30, 2006, due to neck, hip, leg, and back pain, degenerative disc disease, numbness in

the upper and lower extremities, anxiety, and depression. Plaintiff was fully insured for DIB

through December 2008. Plaintiff's applications were denied initially and upon reconsideration.

Plaintiff, through counsel, requested and was granted a de novo hearing before Administrative

Law Judge (ALJ) Deborah Smith. Plaintiff and a vocational expert (VE) appeared and testified

at the ALJ hearing. On December 22, 2009, the ALJ issued a decision denying plaintiff's DIB

and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making

the decision of the ALJ the final administrative decision of the Commissioner.

## II. Medical Evidence

Primary care physician Dr. Joanne DeGreg began treating plaintiff in December 2006 for neck pain, numbness in the upper extremities, anxiety, and depression. (Tr. 211-218, 394). An MRI in December 2006 showed multilevel cervical spondylosis, worse at C4-C5 where there was at least mild to moderate canal stenosis, asymmetrical cord compression with associated abnormal increased T2 signal in the right greater than the left hemicord, more modest canal stenosis and cord compression at C6-C7, and multilevel foraminal stenosis. (Tr. 218).

Dr. DeGreg referred plaintiff to Dr. Christopher McPherson, a neurosurgeon, who performed a multi-level cervical discectomy and fusion on May 4, 2007. (Tr. 178, 180-83, 209, 259-62, 267, 280). Three weeks post-surgery, plaintiff continued with typical post-operative posterior neck pain for which he was taking Percocet, Flexeril and Robaxin. (Tr. 249). Plaintiff reported stable right deltoid weakness present since the time of surgery. Dr. McPherson explained that post-operative C5 palsy is a known risk of the surgery that occurs in about 5% of patients and there was a chance it could be permanent, but with the majority of patients it improves with time. Dr. McPherson recommended physical therapy. *Id.*

Six weeks post-surgery, Dr. McPherson reported that plaintiff's neck pain and arm strength were improving. (Tr. 242). A subsequent MRI in August 2007 showed no evidence of spinal cord compression; multilevel disc degenerative disease, worse at C4-C5 and C6-C7; and stable small focal area of hyperintense T2 signal in the cervical cord at C4-C5, likely representing myelomalacia.[1] (Tr. 214). A November 2007 cervical spine x-ray was stable and

---

[1]Myelomalacia is the softening of the spinal cord. *See* http://medical-dictionary.thefreedictionary.com/myelomalacia (last accessed March 16, 2012).

showed grossly normal alignment. (Tr. 213, 222, 227). Plaintiff continued to complain of moderate neck pain with tingling in both hands and improved right arm weakness. (Tr. 223). Dr. McPherson observed that plaintiff had normal cervical strength and palpation, limited cervical extension, a normal gait, and normal strength in his arms and legs. (Tr. 224-25). Plaintiff reported that he had still been unable to go to physical therapy. (Tr. 222-23). Dr. McPherson did not believe plaintiff's condition would improve any further unless he chose to pursue conservative treatment options, such as physical therapy. (Tr. 225). Dr. McPherson opined that plaintiff had reached maximum medical improvement and should seek consultation from a pain management specialist. (Tr. 225).

In February 2008, state agency medical consultant Dr. Das reviewed plaintiff's medical record and provided a physical capacity assessment. (Tr. 375-82). Dr. Das opined that plaintiff was capable of performing light work, but he should never climb ladders, ropes, or scaffolds, should only occasionally stoop, crouch, and crawl, and should have a limitation on reaching in all directions (including overhead). (Tr. 376-78). In June 2008, state agency medical consultant Dr. Vasiloff reviewed plaintiff's medical record and affirmed Dr. Das's RFC opinion. (Tr. 397).

Plaintiff returned to Dr. DeGreg's practice after a 10-month absence complaining of hip and chronic neck pain and requested a refill of his pain medication. (Tr. 388-90). Thereafter, plaintiff continued to complain of neck, back, and hip pain to Dr. DeGreg. (Tr. 447-49). A hip x-ray in June 2008 was "normal." (Tr. 456). In July 2008, plaintiff advised Dr. DeGreg that his pain was severe enough that he was taking six or seven Percocets each day. (Tr. 448). In February 2009, plaintiff informed Dr. DeGreg that he had been taking up to eight Percocets each day "because he thinks he's become immune to them." (Tr. 446). In March 2009, plaintiff

requested additional Percocets because he had used more in the past month "due to traveling by car 15 hours each way on a trip recently." (Tr. 446). Progress notes and drug testing in 2009 showed consistently negative screens for opioids despite plaintiff's use of six to eight Percocets per day, and in September 2009, Dr. DeGreg advised plaintiff that she would no longer write a prescription for Percocet for him and he would need to find a pain management doctor to get additional pain medication. (Tr. 446, 450, 453, 454, 455).

On October 20, 2009, plaintiff was examined by Dr. Mukarram Kahn, a pain management physician. Plaintiff complained of neck pain that radiated into the lower extremities and lower back, pain increased with movement, and pain decreased with medications without side effects. (Tr. 458). He also complained of fatigue, trouble sleeping, weakness in the arms and legs, joint pain and stiffness, and tingling numbness. (Tr. 458). Upon physical examination, Dr. Khan reported that plaintiff was in no acute distress, exhibited mild tenderness to palpation of paravertebral muscles, positive back pain without radicular pain, decreased range of motion of the cervical, thoracic, and lumbar spine, positive facet loading, and negative straight leg raising. (Tr. 459). Dr. Kahn diagnosed post-lami syndrome of the cervical spine and pelvic and hip pain. *Id*. He prescribed Ibuprofen, Zanaflex, and Percocet. *Id*.

In November 2009, Dr. DeGreg completed a physical RFC questionnaire at the request of plaintiff's counsel. (Tr. 460-64). Dr. DeGreg opined that plaintiff could both sit and stand for 45 minutes at one time, could sit and stand/walk for four hours each during an eight hour workday, and could only occasionally lift 10 pounds or less. (Tr. 462-63). Dr. DeGreg indicated that plaintiff needed six or seven unscheduled 15-minute breaks each day and required the option to alternate positions at-will. (Tr. 462-63). She opined that plaintiff required a cane or

4

other assistive device to stand and walk. (Tr. 463). Dr. DeGreg indicated that plaintiff had

significant limitations on reaching, handling and fingering. (Tr. 464). She opined that plaintiff

would miss more than four days of work per month because of his impairments. (Tr. 464). Dr.

DeGreg also opined that plaintiff was capable of performing only low stress jobs and his

symptoms "constantly" interfered with his ability to maintain attention and concentration. (Tr.

461). The clinical findings and objective signs cited by Dr. DeGreg to support her opinion were

a reduced range of motion in plaintiff's neck and lower spine. (Tr. 460).

## III.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A)

(DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the

work previously performed or in any other substantial gainful employment that exists in the

national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or
mental impairment – *i.e.*, an impairment that significantly limits his or her
physical or mental ability to do basic work activities – the claimant is not
disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the
listings in Appendix 1 to Subpart P of the regulations and meets the duration
requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)

(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the

sequential evaluation process. *Id.; Wilson* v. *Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.

2004). Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the

national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

## IV. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since December 30, 2006, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical spine, s/p [status post] ACDF [anterior cervical discectomy and fusion] in May 2007 (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6

5. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except for no climbing of ladders, ropes, and scaffolds; no more than occasional stooping, crouching, and crawling; and only occasional overhead reaching bilaterally.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant was born [i]n . . . 1956 and was 50 years old, which is defined as an individual "closely approaching advanced age," on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a "limited" education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 30, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-20).

## V. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

7

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004) (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

## VI.  Specific Errors

On appeal, plaintiff argues that: (1) the ALJ erred in determining plaintiff's residual functional capacity; (2) the ALJ erred in determining that plaintiff was not credible; and (3) the ALJ erred in failing to properly apply the Grids.

### A. Plaintiff's RFC

Plaintiff's contends the ALJ erred in assessing his RFC because he relied on the opinion of a non-examining medical consultant, Dr. Das, over that of plaintiff's treating physician, Dr. DeGreg. Dr. DeGreg submitted an RFC assessment in November 2009, opining that plaintiff could both sit and stand/walk for no more than four hours during a normal workday; required six or seven unscheduled, 15-minute breaks; needed the option to sit/stand at-will; required a cane to ambulate; had significant limitations on reaching, handling, and fingering; and would miss more than four days per month because of his impairments, among other limitations. (Tr. 462-64). Plaintiff argues that Dr. Das did not examine plaintiff nor the entire record in assessing plaintiff's RFC. Plaintiff also contends that Dr. Das's opinion is inconsistent with the opinions of the other medical professionals and the record evidence. Plaintiff contends that the ALJ improperly devised the RFC by ignoring Dr. DeGreg's functional assessment and the other medical evidence of record.

Plaintiff is correct that Dr. Das's RFC for light work is inconsistent with the RFC assessment provided by plaintiff's treating physician, Dr. DeGreg, who essentially limited plaintiff to less than sedentary work activity. Generally, the opinion of a treating doctor is entitled to greater weight than that of a physician who has not examined the plaintiff or who has examined the plaintiff on only one occasion. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). The findings and opinions of treating physicians are generally entitled to substantial weight, and if the opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and uncontradicted by other substantial evidence, they are entitled to controlling weight. *See Blakley,*

581 F.3d at 406; *Wilson,* 378 F.3d at 544; *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 529-530

(6th Cir. 1997). When the ALJ declines to give controlling weight to a treating physician's

assessment, "the ALJ must still determine how much weight is appropriate by considering a

number of factors, including the length of treatment relationship and the frequency of

examination, the nature and extent of the treatment relationship, supportability of the opinion,

consistency of the opinion with the record as a whole, and any specialization of the treating

physician." *Blakley*, 581 F.3d at 406. *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir.

2011). In accordance with this rule, the ALJ must give "good reasons" for the ultimate weight

afforded the treating physician's opinion, based on the evidence in the record, and the reasons

must be sufficiently specific to enable meaningful review of the ALJ's decision. *Blakley*, 581

F.3d at 406 (citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p, 1996 WL 374188,

at *5; *Wilson*, 378 F.3d at 544).

      Contrary to plaintiff's argument, the ALJ did not ignore Dr. DeGreg's more restrictive

functional assessment. Rather, the ALJ gave Dr. DeGreg's opinion little weight because her

assessment was not supported by her treatment notes or the objective findings of record and was

inconsistent with her own notes and findings. (Tr. 18). The ALJ's decision in this regard is

supported by substantial evidence.

      The ALJ identified good reasons for discounting the more extreme opinion of Dr.

DeGreg. First, the ALJ reasonably determined that Dr. DeGreg's treatment notes provided little

objective support for her RFC opinion. The ALJ recognized that Dr. DeGreg began treating

plaintiff in 2006, but noted a gap in her treatment records between May 2007 (just before the

cervical fusion) and March 2008 (after the cervical fusion and after plaintiff stopped treatment

with Dr. McPherson). (Tr. 17). Although plaintiff complained of right hip pain in March 2008 when he returned to Dr. DeGreg's practice, a subsequent x-ray showed no abnormalities with the hip. (Tr. 17, 456). The ALJ also noted that Dr. DeGreg identified only decreased range of motion in the neck and lumbar spine as the clinical and objective findings supporting her more extreme RFC limitations. (Tr. 18, 460). Yet, Dr. DeGreg's treatment notes do not show any measurements of either cervical or lumbar range of motion. In contrast, plaintiff's treating neurosurgeon, Dr. McPherson, reported that plaintiff had limited extension in cervical range of motion 6 months after his cervical fusion (Tr. 224-25) and the ALJ reasonably accommodated plaintiff's difficulty looking up by restricting overhead reaching in the RFC. (Tr. 18).

Contrary to plaintiff's argument (Doc. 10 at 9), Dr. DeGreg's report does not reflect that she based her functional assessment on a review of the August 2007 MRI findings. (Tr. 214). In response to the directive to "identify the clinical and objective signs," Dr. DeGreg specifically wrote, "decreased range of motion neck all directions and decreased range of motion lumbar spine." (Tr. 460). In addition, plaintiff's citations to pre-cervical fusion MRI and clinical findings (Doc. 10 at 9-10) do not support Dr. DeGreg's functional assessment because they pre-date plaintiff's cervical fusion surgery and Dr. DeGreg did not rely these findings. Moreover, following plaintiff's spinal fusion surgery, Dr. McPherson reported normal strength, reflexes, and muscle tone, and no cord compression. (Tr. 224-25, 232, 235).

The ALJ also noted inconsistencies between Dr. DeGreg's functional assessment and her treatment records. (Tr. 18). While Dr. DeGreg's functional assessment listed the need for an assistive device for standing and walking (Tr. 463), Dr. DeGreg's treatment notes fail to mention a prescription or need for a cane. Nor are there objective findings in the record to

11

support the need for an ambulatory aid. Hip x-rays were normal and the degenerative changes in the lower lumbar spine were noted as only incidental findings. (Tr. 402). Clinically, plaintiff was observed to consistently have normal gait and station, and Dr. McPherson consistently reported 5/5 muscle strength throughout plaintiff's lower extremities following his surgery. (Tr. 224-25, 238-39, 243-44, 251).

The ALJ noted additional inconsistencies. While Dr. DeGreg's RFC assessment stated plaintiff was not a malingerer (Tr. 18, 461), her treatment notes reflect that she refused to prescribe Percocet on an ongoing basis for plaintiff due to his repeated negative drug screens for opiates when plaintiff claimed to be taking high doses of Percocet. (Tr. 18, 446, 450, 453, 454, 455). The ALJ also noted that Dr. DeGreg's RFC assessment stated that emotional factors do not contribute to plaintiff's symptoms and functional limitations (Tr. 461), but then stated plaintiff could tolerate only low stress jobs. (Tr. 461). As inconsistencies in a treating physician's opinion is a factor the ALJ may consider in determining the weight to accord such opinion, *see Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 242 (6th Cir. 2007), the ALJ reasonably considered the above noted inconsistencies in giving little weight to Dr. DeGreg's functional assessment.

Plaintiff argues that the ALJ should have re-contacted Dr. DeGreg for clarification of plaintiff's RFC if the ALJ felt it was not consistent with her treatment notes. (Doc. 10 at 9). *See* 20 C.F.R. §§ 404.1512(e), 416.912(e) (setting forth how the Agency proceeds with re-contacting a claimant's treating physician when the evidence is inadequate for the Agency to determine whether the claimant is disabled). However, the duty to "re-contact" a physician arises only when the ALJ does not have sufficient information to determine if a claimant is

12

disabled. *See Poe v. Comm'r*, 342 F. App'x 149, 156 n. 3 (6th Cir. 2009). *See also Littlepage v. Chater*, 134 F.3d 371, 1998 WL 24999, at *3 (6th Cir. Jan. 14, 1998) (the ALJ's duty to re-contact a treating source was not triggered when all of the treatment notes and information upon which the doctor based his opinion were in the record). Here, the treatment notes from Dr. DeGreg are part of the record, and plaintiff does not assert that such records are incomplete.

In sum, the ALJ provided reasonable, well-supported justifications for discounting Dr. DeGreg's RFC opinion, and the ALJ's decision to give little weight to Dr. DeGreg's functional assessment should be upheld. The ALJ's RFC finding for a range of light work is supported by Dr. Das's interpretation of the medical record, as well as the objective and clinical evidence of record, including the post-surgery examination findings discussed above which showed improved right arm weakness, a stable and grossly normal cervical spine, normal cervical strength and stability, normal strength and muscle tone of the bilateral upper and lower extremities, and normal gait and station. The ALJ's RFC decision is supported by substantial evidence and should be affirmed.

### B. Plaintiff's credibility

Plaintiff's second assignment of error asserts that the ALJ erred in assessing plaintiff's credibility. Plaintiff alleges that if his testimony is found credible, he would be limited to sedentary work and found disabled under the medical-vocational guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2. Plaintiff testified that he needed to use a cane due to a history of falling and argues there is objective medical evidence indicating he suffers from numbness and weakness in his upper and lower extremities (Doc. 10 at 11, citing Tr. 178, 192, 209, 211, 250, 267, 276, 414, 426, 459), chronic pain in his back, neck, and hip (Doc. 10 at 11, citing Tr. 189, 222, 225,

13

236, 249, 269, 383, 388, 389, 393, 414-15, 447, 458), and anxiety/depression (Doc. 10 at 11,

citing Tr. 211, 222-23). However, plaintiff fails to allege any specific legal or factual errors the

ALJ made in assessing his credibility. It appears plaintiff seeks a *de novo* decision by this Court

as to his credibility, which is improper as outside the scope of judicial review in this matter. *See*

*Rogers*, 486 F.3d at 241 (court's review is limited to deciding whether ALJ's decision is

"supported by substantial evidence and was made pursuant to proper legal standards"). In any

event, the ALJ's credibility decision in this case is substantially supported by the record.

In light of the Commissioner's opportunity to observe the individual's demeanor, the

Commissioner's credibility finding is entitled to deference and should not be discarded lightly.

*Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "[A]n ALJ's findings based on the

credibility of the applicant are to be accorded great weight and deference, particularly since an

ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless,

an ALJ's assessment of a claimant's credibility must be supported by substantial evidence."

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citations omitted). In

evaluating complaints of disabling pain, the ALJ must determine "whether there is objective

medical evidence" that "confirms the severity of the alleged pain" or "can reasonably be

expected to produce the alleged disabling pain." *Id.* "[I]f disabling severity cannot be shown by

objective medical evidence alone, the Commissioner will also consider other factors, such as

daily activities and the type and dosage of medication taken." *Id.* (citing 20 C.F.R. §

404.1529(c)(3)).

At the November 2009 hearing, plaintiff testified that he was unable to continue working

because of the inability to climb ladders (Tr. 34, 44), coupled with cervical spine issues and

14

surgery complications (Tr. 35, 48), which included a post-operative infection, trouble

swallowing and speaking. (Tr. 34-35). He testified he was unable to hold objects in his hands

because of neck pain that radiates into his arms, causing numbness, tingling, palsy, and

weakness. (Tr. 35-36, 41-42, 45, 47). He also stated he was prescribed a cane due to a history

of falls and trouble walking, stooping, and bending. (Tr. 36, 41-42, 49). Plaintiff testified he

was unable to look up, down, or side to side due to the four metal plates that were placed in his

neck and was unable to drive due to the inability to turn his neck. (Tr. 29, 40-41). Plaintiff

testified he had trouble sleeping more than two to three hours at a time due to severe pain and

had to rest once every one to two hours during the day in a flat position without pillows. (Tr.

48).

   The ALJ determined that plaintiff's statements about his limitations were not credible.

The ALJ reasonably determined that plaintiff's extreme complaints were not consistent with the

record evidence. With respect to plaintiff's complaints of right hip and leg pain, the ALJ

reasonably noted the absence of objective and clinical evidence in the record to account for

plaintiff's hip and leg pain. (Tr. 15, 389, 238-39, 279). X-rays of the hip yielded normal results

and noted only incidental findings of degenerative changes in the lower lumbar spine on the

right. (Tr. 402). The ALJ also noted that while plaintiff testified that Dr. DeGreg, his primary

care physician, prescribed a cane for him in October 2008 because he had trouble walking and

his legs kept going out from under him, the record evidence failed to support a finding that an

assistive device was medically prescribed or indicated because: (1) Dr. DeGreg's office notes

failed to corroborate a prescription for an assistive device; (2) Dr. McPherson, plaintiff's

neurosurgeon, reported that plaintiff ambulated with a normal gait and had 5/5 muscle strength

15

throughout his lower extremities (Tr. 224-25, 238-39, 243-44, 251); and (3) Dr. Khan, a pain management doctor, never mentioned any gait disturbance or use of a cane. (Tr. 15, 458-59). While plaintiff also alleged significant difficulty using his upper extremities, the ALJ reasonably determined that the clinical and objective findings of record showed improvement in muscle strength following his surgery, stable x-rays, and lack of radicular pain into his arms following the cervical fusion. (Tr. 16-17, citing Tr. 222, 224-25, 227, 236). Additionally, the ALJ noted plaintiff's allegations that he had only 15-20% use of his right arm and 50% use of the left arm were inconsistent with Dr. McPherson's findings of continued improved right arm weakness following the cervical fusion and 5/5 bilateral upper extremity strength six months post-operatively. (Tr. 17, citing Tr. 224). The ALJ also determined that plaintiff's credibility was "seriously eroded by indications in the record that he reported taking large amounts of Percocet for pain, yet repeatedly had urine drug screens that showed no opiates in his system." (Tr. 17, citing Tr. 446, 450-51, 455, 454). The ALJ reasoned that if plaintiff took as many Percocets as he alleged throughout the record, his urine screens would not have been consistently negative for opiates. (Tr. 17, 39-40, 446, 448, 450, 453-55). The ALJ noted that Dr. DeGreg eventually refused to prescribe any more Percocet for plaintiff after he continued to request additional medications (Tr. 446, 451) and the ALJ found plaintiff's explanation for the negative drug screens – that he had run out of Percocet the week prior to the screens – was not believable because he would very likely still have opiates in his system if taking such a high dosage. (Tr. 17). The ALJ further found plaintiff's testimony that he had not taken a long car trip since his alleged onset date to be inconsistent with medical records showing he had taken a car trip that was 15 hours each way and needed more Perocet. (Tr. 17, citing Tr. 446). The ALJ properly

evaluated plaintiff's credibility and, in light of the inconsistencies between plaintiff's allegations and the record evidence, the ALJ's explanations for discrediting plaintiff are reasonable and find substantial support in the record. *See Jones v. Comm'r,* 336 F.3d 469, 476 (6th Cir. 2003). Plaintiff's second assignment of error should be overruled.

### C. Application of the Grids

Plaintiff's third assignment of error asserts the ALJ erred in failing to properly apply the medical-vocational guidelines (the Grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2. Plaintiff cites to vocational testimony indicating that if either Dr. DeGreg's RFC opinion or plaintiff's own testimony is credited, he would not be able to perform light work. (Doc. 10 at 14). Plaintiff argues that given his age (over 50), education, and past work experience, he should be found disabled if limited to sedentary work under Grid Rule 202.08.

Plaintiff essentially argues that the ALJ's RFC finding and credibility finding are unsupported and that he should have been given a more restrictive RFC, *i.e.,* an RFC for sedentary work. The Court has already addressed the ALJ's RFC and credibility findings and recommends such findings be upheld. As such, plaintiff would not be entitled to the benefit of a more favorable Grid rule and his third assignment of error should be overruled.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 3/21/12

Karen L. Litkovitz
United States Magistrate Judge

17

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

GARY WAYNE SMITH,
    Plaintiff

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:11-cv-203
Spiegel, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

18